IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BOBBY JOE LEONARD,

    Plaintiff,

v.                              Civil Action No. 3:16CV119–HEH

W.W. PIXLEY, *et al.*,

    Defendants.

## MEMORANDUM OPINION
(Granting Motion for Summary Judgment)

Bobby Joe Leonard, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action. Leonard's claims flow from the allegedly unconstitutional treatment Leonard received after he sexually assaulted his cellmate in Sussex II State Prison ("Sussex II"). Specifically, Leonard contends that:

Claim 1    "I was stripped of my liberty and suffered the loss of my income and property . . . when I was removed from my cell in general population and was placed in administrative segregation where I have now been held for over six (6) months without any procedural due process . . . ." (Compl. 4, ECF No. 1.)[1]

Claim 2    The conditions in administrative segregation violated the Eighth Amendment because "I have been denied any form of recreation outside of the cell for more than (3) months, and because the portions of food being served has caused me to lose forty-six (46) pounds . . . in six months . . . ." (*Id.*)

---

[1] The Court corrects the capitalization and punctuation in the quotations from Leonard's submissions.

Defendants[2] have moved for summary judgment on the grounds that Leonard has failed to exhaust his administrative remedies and his claims lack merit. Leonard has responded. For the reasons set forth below, Claim 2 will be dismissed for lack of exhaustion and Claim 1 will be dismissed for lack of merit. Furthermore, Leonard's complaints that he lost income and property because of his placement in segregation are subject to summary dismissal under 28 U.S.C. § 1915(e)(2) and will not be considered further. *See Jordan v. Rodriguez*, No. 3:11CV193, 2013 WL 4759247, at *3 (E.D. Va. Sept. 4, 2013) (citing *Wadhams v. Procunier*, 772 F.2d 75, 78 (4th Cir. 1985)); *Henderson v. Capital Constr.*, 3:08cv207–HEH, 2011 WL 977580, at *5 (E.D. Va. Mar. 15, 2011) (citing *Backus v. Ward*, No. 98–6331, 1998 WL 372377, at *1 (4th Cir. June 8, 1998); *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978)).

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is

---

[2] Leonard names as Defendants W.W. Pixley, J. Koch, D. Peters, T. Birckhead, R. Hayes, and B. Perkins. (Mem. Supp. Mot. Summ. J. 1, ECF No. 21, ECF No. 23.)

properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

Defendants asks the Court to dismiss Claim 2 because Leonard failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). As exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

In support of their Motion for Summary Judgment, Defendants submit, *inter alia*,: (1) an affidavit from A. James, the Institutional Ombudsman at Sussex II (Mem. Supp. Mot. Summ. J. Ex. 1 ("James Aff."), ECF No. 21-1); (2) a copy of Virginia Department of Corrections ("VDOC") Operating Procedure § 866.1 (*id.* Encl. A. ("Operating Procedure § 866.1")); (3) copies of grievance materials submitted by Leonard (*id.* Encls. B–C); (4) an affidavit from Tracy Ray, the Warden of Sussex II (Mem. Supp. Summ. J. Ex. 2 ("Ray Aff."), ECF No. 21-2); and (5) an affidavit from Natarcha Gregg, the Dietician for the VDOC (Mem. Supp. Mot. Summ. J. Ex. 3 ("Gregg Aff."), ECF No. 21-3). Leonard responded to the Motion for Summary Judgment by filing a largely unsworn response[3] and some grievance material.

---

[3] Leonard did swear under penalty of perjury to a single statement in his Response. Specifically, Leonard states, "Plaintiff, Bobby Joe Leonard, do hereby swear under penalty of perjury, that I never appeared at *any* ICA hearings; I was never given an opportunity to speak or make a statement before an ICA tribunal; and I never received one copy of an ICA committee's decisions concerning my case." (Resp. 4.)

In light of the foregoing submissions, the following facts are established for the Motion for Summary Judgment. The Court draws all permissible inferences in favor of Leonard.

## II. UNDISPUTED FACTS

Leonard was confined in Sussex II from March 14, 2012 through December 21, 2016, when he was transferred to Wallens Ridge State Prison. (Ray Aff. ¶ 4.) "[O]n July 29, 2015, Leonard was removed from the general population at Sussex II and was placed in investigative segregation after his cellmate reported to staff that he was raped by Leonard." (*Id.* ¶ 5.) On August 23, 2015, Leonard's "housing status was changed from investigative segregation to administrative segregation pending the conclusion of the investigation. Leonard remained in segregation in Housing Unit 3B until he was transferred to Wallens Ridge State Prison on December 21, 2016." (*Id.*)

"During his confinement to segregation, Leonard's status was reviewed by the [Institutional Classification Authority ("ICA")] on July 29, 2015, August 13, 2015, September 9, 2015 (annual review), October 29, 2015, January 29, 2016, March 29, 2016, April 20, 2016, May 10, 2016, August 2, 2016, August 30, 2016 (annual review) and December 19, 2016." (*Id.* ¶ 6.)

"Unless security or safety considerations dictate otherwise, offenders housed in segregation are allowed a minimum of one hour of out of cell exercise five separate days each week in a supervised area. . . . Offenders assigned to . . . segregation . . . receive the same number and type of meals served to the general population." (*Id.* ¶ 7.)

4

On July 29, 2015, the Special Investigations Unit (SIU) and the VDOC Prison Rape Elimination Act (PREA) analysts recommended

> to continue with Leonard's segregation housing status until he went to court. On or about March 15, 2016, the investigation was concluded by SIU and the case was forwarded to the Sussex County Commonwealth Attorney's Office. On March 29, 2016, Sussex II State Prison Institutional Investigator Hayes charged Leonard with Disciplinary Offense code #106B, sexual assault upon or making forcible sexual advances towards another offender. During a disciplinary hearing on April 6, 2016, the Inmate Hearings Officer found Leonard guilty based on the evidence presented at the hearing to include the SIU report indicating that DNA evidence and bruising were found to be consistent with rape. Leonard also was administered a polygraph examination which showed deception when he was asked whether he raped his cellmate.

(*Id.* ¶ 9.) In October of 2016, Warden Ray and the Regional Administrator discussed Leonard

> and concluded that based on Leonard's history of sexual misconduct, prior criminal convictions for rape and sodomy, his pending rape charges, and for the protection [of] other offenders, Leonard should not be released to the general population. He remained in segregation at Sussex II until after his trial in Sussex County Circuit Court on December 14, 2016 where Leonard was convicted of sodomy against his cellmate.

(*Id.* ¶ 10.)

The VDOC "Offender Grievance Procedure[] is a mechanism for offenders to resolve complaints, appeal administrative decisions, and challenge the substance of procedures." (James Aff. ¶ 4.) "[A]ll issues . . . . are grievable except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, disciplinary hearings, State and Federal Court decisions, laws and regulations, and other matters beyond the control of the [VDOC]." (*Id.* ¶ 5.) "Leonard has not submitted any grievances regarding the alleged denial of outside recreation and his allegedly small food portions." (*Id.* ¶ 10.)

5

## III. ANALYSIS

### A. Lack of Exhaustion

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Leonard has not filed any grievances regarding the allegedly inadequate food and recreation that is the subject of Claim 2.[4] Accordingly, Claim 2 will be dismissed.

### B. Failure to Demonstrate a Due Process Violation

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases). A liberty interest may arise from the

---

[4] Leonard acknowledges this in his response and agrees the claim should be dismissed.

Constitution itself, or from state laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 220–21 (2005).

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). "[C]hanges in a prisoner[']s location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his [or her] original sentence to prison . . . ." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Thus, the Constitution itself does not give rise to a liberty interest in avoiding segregation. *Id.*

Demonstrating the existence of a state-created liberty interest requires a "two-part analysis." *Prieto v. Clarke*, 780 F.3d 245, 249 & n.3 (4th Cir. 2015) (quoting *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000)). First, a plaintiff must make a threshold showing that the deprivation imposed amounts to an "atypical and significant hardship" or that it "inevitably affect[s] the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see Puranda v. Johnson*, No. 3:08CV687, 2009 WL 3175629, at *4 (E.D. Va. Sept. 30, 2009) (citing cases). If the nature of the restraint the plaintiff challenges meets either prong of this threshold, the plaintiff must next show that Virginia's statutory or regulatory language "'grants its inmates . . . a protected liberty interest in remaining free from that restraint.'" *Puranda*, 2009 WL 3175629, at *4 (alteration in original) (quoting *Abed v. Armstrong*, 209 F.3d 63, 66 (2d Cir. 2000)).

7

Leonard fails to demonstrate that he enjoys a liberty interest in avoiding segregation. *Chapman v. Bacon*, No. 3:14CV641, 2017 WL 559703, at *13 (E.D. Va. Feb. 10, 2017) ("*Sandin* itself forecloses the notion that all forms of punitive or administrative segregation presumptively constitute an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" (quoting *Sandin*, 515 U.S. at 484)). Leonard has not submitted any *evidence* that indicates segregation constitutes an "atypical and significant hardship" in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.[5] Furthermore, Leonard fails to direct the Court to any Virginia statutory or regulatory language that gives rises to a protected liberty interest in avoiding segregated confinement. Accordingly, Claim 1 will be dismissed as lacking in merit.

Defendants' Motion for Summary Judgment (ECF No. 20) will be granted. The action will be dismissed.

An appropriate Final Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: May 16 2017
Richmond, Virginia

---

[5] Leonard does not suggest his confinement in segregation impacted the length of his sentence.

8